# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG WILLIAMS, | ) | |
| | ) | Civil Action No. 12 - 1213 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | District Judge Mark R. Hornak |
| | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| LT. ARMSTRONG, SUPT. FOLINO, | ) | |
| CHIEF R. LEWIS, LT. KENNEDY, | ) | ECF No. 29 |
| MAJ. LEGGET, T. SHAWLEY, R. | ) | |
| MCCOMBIE, J. ROGERS, JOHN | ) | |
| DOE, and C.O.1 PAWLOWSKI, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that Defendants' Motion to Dismiss (ECF No. 29) be granted.

### II. REPORT

Craig Williams ("Plaintiff") is an inmate committed to the custody of the Pennsylvania Department of Corrections and is currently confined at the State Correctional Institution at Albion. The events forming the basis for his claims occurred while he was confined at the State Correctional Institution at Greene ("SCI-Greene"). They are briefly summarized as follows:

On May 23, 2012, Plaintiff allegedly made inappropriate comments to Defendant Pawlowski, a female correctional officer. The following day, he was placed on Administrative Custody ("AC") status pending an investigation and a Peer Review Committee ("PRC") hearing. He was removed from the general population and transferred to F-Block in the Restricted

1

Housing Unit ("RHU"). On May 29, 2012, the PRC determined that Plaintiff should remain on AC status until his transfer out of SCI-Greene. Plaintiff appealed his AC status but the decision was upheld. On May 30, 2012, Plaintiff was transferred to G-Block, and, on July 27, 2012, he was transferred to H-Block, where he remained until his transfer out of SCI-Greene on September 13, 2012. *See* ECF No. 10, Plaintiff's Amended Complaint.

Plaintiff alleges that his placement on AC status violated his rights under the Eighth and Fourteenth Amendments because there was a lack of evidence to support the charge against him. He also alleges violations pertaining to the conditions of his confinement while housed in the RHU. Defendants have filed a Motion to Dismiss Plaintiff's Amended Complaint, which the Court has converted in a Motion for Summary Judgment with respect to the argument that Plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act. In all other respects, the Court has construed the Motion to Dismiss as is and Plaintiff has responded accordingly. Defendants have also filed a Reply in response to Plaintiff's Response. For the reasons set forth herein, Defendants' Motion should be granted.

### A. Standard of Review

Defendants have filed Motions to Dismiss Plaintiff's Amended Complaint. A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Ashcroft v. Iqbal, 129 S. Ct.1937, 1949 (May 18, 2009) (citing Twombly, 550 U.S. at 555-57). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (citing Twombly, 550 U.S. at 556-57).

In Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit discussed its decision in Phillips v. County of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008) (construing Twombly in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of Twombly and Iqbal as follows:

> After Iqbal, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See* Id. at 1949-50; *see also* Twombly, 505 U.S. at 555, & n. 3.

Fowler, 578 F.3d at 210.

Thereafter, in light of Iqbal, the United States Court of Appeals for the Third Circuit in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009), set forth the following two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S. Ct. at 1949]. Second, a District Court must then determine

3

> whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-11.

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d,* § 1357; Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)). A court may also consider indisputably authentic documents. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); Golden v. Cook, 293 F. Supp.2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of which they may take judicial notice, including records and reports of administrative bodies, and publically available records and transcripts from judicial proceedings 'in related or underlying cases which have a direct relation to the matters at issue.'") (citations omitted).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v.

Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

### B. Discussion

#### 1. Failure to Exhaust Administrative Remedies

Defendants first argue that Plaintiff's Amended Complaint should be dismissed because he failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which prohibits prisoners from bringing an action with respect to prison conditions pursuant to 42 U.S.C. § 1983 or any other federal law, until such administrative remedies as are available are exhausted. *See* 42 U.S.C. § 1997e(a). Defendants concede that Plaintiff did exhaust his remedies with regard to his initial placement on AC status but argue that Plaintiff failed to exhaust his grievances that he subsequently filed after that. Plaintiff adamantly argues that Defendants are incorrect, but, rather than address each grievance at issue, the undersigned will address the merits of Plaintiff's claims for which Defendants also maintain are subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). However, Plaintiff should be aware that the undersigned has expressed no opinion as to whether he complied with the exhaustion requirement of the PLRA.

## 2. Due Process

Plaintiff maintains that he was denied due process in connection with his placement in the RHU on AC status; namely, that the so called Other report that was issued against him did not specify any inappropriate comments he allegedly made to Defendant Pawlowski or detail how he was a danger to himself or others. He repeatedly refers to the report as a "hollow" document and that he was denied due process specifically because there was a lack of evidence to support a finding that he made such comments and thus his placement on AC status. However, Defendants are correct in that Plaintiff fails to state a due process claim because his four-month period of confinement in the RHU on AC status was not of sufficient duration to trigger the protections imposed by the Fourteenth Amendment.

Prison disciplinary hearings are not part of a criminal prosecution and the full panoply of rights due an inmate in such proceedings does not apply. Wolff v. McDonnell, 41 U.S. 539, 556 (1974). It is only when a prisoner is facing the loss of a legally cognizable liberty interest following disciplinary proceedings when due process rights to certain procedural protections apply, including written notice of the charge at least twenty-four hours before the hearing; the opportunity to call witnesses and present documentary evidence; the right to an impartial tribunal; and a written statement describing the evidence relied upon and the reasons for reaching the decision. Id. 562-67. "[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim." Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002). If there is "any evidence in the record that could support the conclusion reached by the disciplinary board," then due process is satisfied. Superintendent v. Hill, 472 U.S. 445, 455-56 (1985).

However, this due process right is not triggered unless the prison imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483 (1995) (acknowledging that liberty interests can arise from means other than the Due Process Clause itself). In finding that a prisoner's thirty-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Court in Sandin considered the following two factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement. Id. at 486.

Applying these legal benchmarks here, it is clear that Plaintiff's four-month long stint in the RHU on AC status[1] did not give rise to a due process claim because it has been held that disciplinary proceedings in similar situations, which resulted in sanctions of disciplinary segregation for six months or more, did not impose atypical and significant hardships on inmates in relation to the ordinary incidents of prison life and did not give rise to due process claims. *See e.g.*, Crosby v. Piazza, 465 F. App'x 168, 2012 WL 641938 (3d Cir. 2012) (270 days of disciplinary segregation); Foster v. Sec'y, PA Dept. of Corr., 431 F. App'x 63, 65 (3d Cir. 2011) (held, "transfer to a restricted housing unit was not an atypical or significant hardship or a severe change in the conditions of his confinement" triggering due process protections); Milton v. Ray, 301 F. App'x 130 (3d Cir. 2008); Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002) (seven months disciplinary confinement). Accordingly, this claim should be dismissed.

---

[1] The record reveals that Plaintiff was on AC status and housed in the RHU from May 24, 2012, until his transfer from SCI-Greene on September 13, 2012.

Plaintiff adamantly takes issue with the evidence that was used to support his placement in the RHU on AC status. Even though Plaintiff was not entitled to due process protections, the undersigned notes that there was "sufficient evidence" to support the decision of the PRC in this case. *See* Hill, 472 U.S. at 455. The determination of whether the "sufficient evidence" standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56.

Upon review of the record, it is apparent that there was sufficient evidence to support Plaintiff's placement in the RHU on AC status. The record indicates that there were "separation issues" between Plaintiff and Defendant Pawlowski based on an earlier event that occurred when Plaintiff was a capital inmate housed in the capital case unit. *See* ECF No. 43-1 at p.4. Defendant Pawlowski's report indicates that she was approached by Plaintiff while she working in the dining hall on May 23, 2012, at which time Plaintiff asked her whether she had been informed that he was out of the capital case unit and now in general population. Defendant Pawlowski informed security that she had previously signed a statement that she would not have to work on the same block as Plaintiff and also informed them that she now felt uncomfortable with Plaintiff having general population status. Due to this issue, the PRC determined that Plaintiff would be transferred to another facility but remain on AC status in the RHU until his transfer. *See* ECF No. 43-1 at p.6. Clearly, there is sufficient evidence in the record to support the conclusion reached by the PRC.

### 3. Eighth Amendment

Plaintiff next complains that the conditions of his confinement in the RHU violated the Eighth Amendment because he was denied the "minimal civilized measure of life's necessities." The Constitution does not mandate comfortable prisons. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). Prisons housing "persons convicted of serious crimes cannot be free of discomfort." Id. *Accord* Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment).

Neither classification nor confinement to segregation, either administrative or punitive, implicates the Cruel and Unusual Punishment Clause of the Eighth Amendment unless the conditions themselves are cruel and unusual. Hutto v. Finney, 437 U.S. 678, 686 (1978); Spaight v. Coughlin, 104 F.3d 350 (Table), 1996 WL 518507 (2d Cir. 1996), *cert. denied*, 519 U.S. 1121 (1997); Young v. Quinlan, 960 F.2d 351, 363 (3d Cir. 1992); Sheley v. Dugger, 833 F.2d 1420, 1428-29 (11th Cir. 1987); Gibson v. Lynch, 652 F.2d 348, 352 (3d Cir. 1981) ("administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment") (citing Hutto), *cert. denied*, 462 U.S. 1137 (1983).

Prison conditions may amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs . . . [that] deprive inmates of the minimal civilized measure of life's necessities." Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d Cir. 2000). In reviewing conditions of confinement claims, courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane

treatment. *See* Wilson v. Seiter, 501 U.S. 294, 304-05 (1991). Moreover, the focus must be on the deprivation of a particular basic necessity.

Plaintiff fails to allege any facts to demonstrate that the conditions of his confinement in the RHU deprived him of any basic human need such as food, clothing, shelter, sanitation, medical care or personal safety. Plaintiff's allegations regarding having to go without a mirror, pillow and cabinet to hold his property cannot be considered "cruel and unusual" for purposes of the Eighth Amendment, nor are the restrictions Plaintiff details in the attachment to his Amendment Complaint, such as, confinement to cell for 23 hours a day; constant security lighting; no cigarettes or juice; being handcuffed while escorted; no yard games, weights, etc.; no cell mates; and no privacy when conversing with medical professionals at cell door. *See* ECF No. 10-1. Put simply, these are not conditions that are so objectively serious to warrant constitutional protection. Therefore, this claim should be dismissed.

### 4. Personal Involvement

For liability under 42 U.S.C. § 1983, a defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. However, alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement; allegations "must be made with appropriate particularity." Id.

Importantly for this case, personal knowledge of constitutional violations cannot be established solely as a result of addressing grievances. *See* Dellarciprete, 845 F.2d at 1208. The

denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement.  *See* Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); Manns v. Bledsoe, No. 10-1564, 2011 U.S. Dist. LEXIS 102268, 2011 WL 4048781, at *4 (M.D. Pa. Sept. 12, 2011); Mincy v. DeParlos, No. 08-0507, 2011 U.S. Dist. LEXIS 31168, 2011 WL 1120295, at *7 (M.D. Pa. Mar. 24, 2011); Wilkerson v. Schafer, No. 09-2539, 2011 U.S. Dist. LEXIS 25916, 2011 WL 900994, at *7 (M.D. Pa. Mar. 14, 2011) (allegations that defendants "should be held liable for due process violations because they should have become aware of them through their review of his misconduct appeals is insufficient to establish their personal involvement in the underlying unconstitutional conduct"); Logan v. Lockett, No. 07-1759, 2009 U.S. Dist. LEXIS 24328, 2009 WL 799749, at *8 (W.D. Pa. Mar. 25, 2009); Croom v. Wagner, No. 06-1431, 2006 U.S. Dist. LEXIS 64915, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pa. Dept. of Corr., No. 06-1444, 2006 U.S. Dist. LEXIS 51582, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement). Applying this standard here, Defendants Armstrong, Folino, Lewis, Shawley, Kennedy, Rogers,

McCombie and Doe[2] should be dismissed because there are no allegations of personal involvement outside of their involvement in the administrative review process.

### 5. Amendment of Complaint

The Court must allow amendment by the plaintiff in a civil rights case brought under § 1983 before dismissing pursuant to Federal Rule of Civil Procedure 12(b)(6), irrespective of whether it is requested, unless doing so would be "inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); *see also* Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile). In this case, allowing amendment by Plaintiff would be futile. A careful review of the record commands that Plaintiff, even garnering all the liberalities that accompany his *pro se* status, fails to state any claims under § 1983 for which relief may be granted.

## III. <u>CONCLUSION</u>

For the reasons set forth above, it is respectfully recommended that Defendants' Motion to Dismiss (ECF No. 29) be granted.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

---

[2] Plaintiff states that Defendant John Doe was a member of his Program Review Committee. This defendant was not served because he has not yet been identified. However, pursuant to 28 U.S.C. § 1915(e)(2), when a plaintiff is proceeding *in forma pauperis*, a court shall dismiss the complaint, at any time, if it determines that it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Therefore, it is recommended that the Court *sua sponte* dismiss Defendant Doe even though he has not yet been identified and served.

Dated: November 14, 2013

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: Craig Williams
BX-9919
SCI Albion
10745 Route 18
Albion, PA 16475

Counsel of Record
*Via ECF Electronic Mail*